# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Grabeck*, 2011 IL App (2d) 100599

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. ROBERT F. GRABECK, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-10-0599 |
| Filed | December 14, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a prosecution for DUI, the rescission of the statutory summary suspension of defendant's driving privileges on the ground that the arresting officer's sworn report failed to indicate the manner by which defendant was given notice of the suspension was reversed. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 09-DT-5173; the Hon. Robert G. Kleeman, Judge, presiding. |
| Judgment | Reversed and remanded. |

| Counsel on Appeal | Joseph E. Birkett, State's Attorney, of Wheaton (Lisa Anne Hoffman, Assistant State's Attorney, and Lawrence M. Bauer and Gregory L. Slovacek, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| --- | --- |
| | Dennis A. Harrison and Joseph M. Laraia, both of Laraia, Harrison & Laraia, P.C., of Wheaton, for appellee. |
| Panel | JUSTICE BURKE delivered the judgment of the court, with opinion. Justice Bowman concurred in the judgment and opinion. Justice McLaren dissented, with opinion. |

**OPINION**

¶ 1     The State raises two issues in this appeal: (1) whether the statutory summary suspension of the driving privileges of defendant, Robert F. Grabeck, must be rescinded when the "Law Enforcement [Officer's] Sworn Report" (Sworn Report) does not indicate the manner by which notice of the suspension was served on defendant and (2) whether the trial court erred when it denied the State's motion to amend the Sworn Report to reflect that notice of the summary suspension of defendant's driving privileges was mailed to him. For the reasons that follow, we determine that failing to indicate on the Sworn Report the manner by which defendant was given notice of his suspension is not a defect warranting rescission of his suspension. Our holding obviates the need to decide whether the trial court erred in denying the State's motion to amend the Sworn Report to indicate the manner by which notice of the suspension was served on defendant. We reverse the rescission of the statutory summary suspension and remand the cause for further proceedings.

¶ 2                              FACTS

¶ 3     The facts relevant to resolving this appeal are as follows. On December 21, 2009, defendant was observed speeding (625 ILCS 5/11-601(b) (West 2008)), disobeying a stop sign (625 ILCS 5/11-1204(b) (West 2008)), and allegedly driving under the influence of drugs (DUI) (625 ILCS 5/11-501(a)(4) (West 2008)). After a blood test confirmed that defendant was DUI, the arresting officer completed a Sworn Report, which is a preprinted form on which the officer fills in details about the DUI arrest. On this form, the officer indicated that "Notice of Summary Suspension [was] Given On 03/12/10." At the bottom of the Sworn Report was the following:

        "Pursuant to Section 11-501.1 of the Illinois Vehicle Code I[, *i.e.*, the officer,] have:

-2-

□ Served immediate Notice of Summary Suspension of driving privileges on the above-named person.

□ Given Notice of Summary Suspension of driving privileges to the above-named person by depositing in the U.S. mail said notice in a prepaid postage envelope addressed to said person at the address as shown on the Uniform Traffic Ticket."

¶ 4    Underneath this certification, the officer signed his name and dated the Sworn Report "3/12/10." Although the Sworn Report provided a way for the officer to indicate the manner by which service of the summary suspension was made on defendant, the officer checked neither box and did not otherwise indicate on the Sworn Report how service was effected.

¶ 5    Thereafter, the Secretary of State's office (Secretary) sent defendant a "Confirmation of Statutory Summary Suspension [(Confirmation)]." According to the Confirmation, defendant's suspension was effective beginning April 27, 2010, which was 46 days after March 12, 2010.

¶ 6    On April 16, 2010, defendant petitioned to rescind the statutory summary suspension of his driving privileges. Defendant sought to rescind the suspension because "the arresting authorities, and the Secretary ***, failed to comply with the provisions of Section 11-501.1(h) by issuing a Confirmation *** where the [Sworn Report] was completed in error in that it was sent to the Secretary *** without indicating whether service was made upon the Defendant by (1) immediate service; or (2) by notice by mail." The petition did not allege that defendant had not actually received notice of the suspension.

¶ 7    Prior to a hearing on the petition, the State sought to amend the Sworn Report to indicate that notice of the suspension was served on defendant by mail. The trial court denied that motion and granted defendant's petition to rescind. The State moved to reconsider, emphasizing that the Sworn Report indicated that "Notice of Summary Suspension [was] Given On 03/12/10." Even though the trial court was not aware of that provision on the Sworn Report when it initially ruled, the court found that this fact did not alter the court's view that defendant's petition to rescind should be granted. Thus, the trial court denied the State's motion to reconsider, and this timely appeal followed.

¶ 8                                    ANALYSIS

¶ 9    The dispositive issue in this appeal is whether the summary suspension of defendant's driving privileges must be rescinded where the Sworn Report failed to indicate the manner by which defendant was given notice of the suspension. Resolving that issue turns on interpreting various statutes. When the outcome of an appeal is dependent on the construction of various statutes, the well-settled rules of statutory construction apply. "The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature." *People v. McClure*, 218 Ill. 2d 375, 381 (2006). "The best evidence of legislative intent is the language of the statute." *McClure*, 218 Ill. 2d at 382. "When possible, the court should interpret the language of a statute according to its plain and ordinary meaning." *McClure*, 218 Ill. 2d at 382. "If intent can be determined from the plain language of the statute, there is no need to resort to interpretive aids." *McClure*, 218 Ill. 2d at 382. "Courts are to construe the statute as a whole, so that no part of it is rendered meaningless

or superfluous." *McClure*, 218 Ill. 2d at 382. "A court should not depart from the language of the statute by reading into it exceptions, limitations, or conditions that conflict with the intent of the legislature." *McClure*, 218 Ill. 2d at 382. Because resolving the issue raised turns on interpreting statutes, our review is *de novo. In re J.L.*, 236 Ill. 2d 329, 339-40 (2010).

¶ 10     Having delineated the rules of statutory construction, we turn next to the sections of the Illinois Vehicle Code (Code) that apply here. Section 11-501.1(d) requires the arresting officer to submit a Sworn Report to the Secretary, certifying that a test was requested and that the defendant either took the requested test and failed or refused to submit to testing. 625 ILCS 5/11-501.1(d) (West 2008). Once the Secretary receives the Sworn Report, his office must follow one of two courses of action prescribed in section 11-501.1(h) (625 ILCS 5/11-501.1(h) (West 2008)). Specifically, section 11-501.1(h) provides:

> "Upon receipt of the sworn report from the law enforcement officer, the Secretary of State shall confirm the statutory summary suspension by mailing a notice of the effective date of the suspension to the person and the court of venue. The Secretary of State shall also mail notice of the effective date of the disqualification to the person. However, should the sworn report be defective by *not containing sufficient information or be completed in error*, the confirmation of the statutory summary suspension shall not be mailed to the person or entered to the record; instead, the sworn report shall be forwarded to the court of venue with a copy returned to the issuing agency identifying any defect." (Emphasis added.) 625 ILCS 5/11-501.1(h) (West 2008).

¶ 11     In addition to submitting the Sworn Report to the Secretary, the officer submitting the Sworn Report shall also give the defendant notice of the statutory summary suspension. 625 ILCS 5/11-501.1(f) (West 2008). The first sentence of section 11-501.1(f) explicitly requires a law enforcement officer to give "immediate notice" of a statutory summary suspension, but the next sentence creates an exception in cases like this, where the blood-alcohol concentration "is established by a subsequent analysis of blood or urine collected at the time of arrest." 625 ILCS 5/11-501.1(f) (West 2008). In that situation, the statute provides that the officer submitting the Sworn Report must either serve immediate notice of the statutory summary suspension on the defendant or send notice to the defendant via mail. 625 ILCS 5/11-501.1(f) (West 2008); *People v. Jordan*, 336 Ill. App. 3d 288, 291 (2003). "The statutory summary suspension and disqualification referred to in this Section shall take effect on the 46th day following the date the notice of the statutory summary suspension was given to the person." 625 ILCS 5/11-501.1(g) (West 2008).

¶ 12     Even though a defendant's driving privileges may be suspended in this manner for DUI, the defendant is not without recourse. That is, a defendant may petition to rescind the statutory summary suspension of his driving privileges. 625 ILCS 5/2-118.1(b) (West 2008).

¶ 13     In his petition for rescission, defendant argued that, under section 11-501.1(h), the Sworn Report is "defective," in that it fails to contain "sufficient information"; and therefore, the Secretary should have forwarded the Sworn Report to the trial court and should have sent a copy to the agency that issued it, rather than sending him a confirmation of the suspension. Specifically, defendant alleged that the Sworn Report is defective because it does not indicate

how notice of the suspension was given to him. The scope of a hearing on a petition to rescind is limited to the following:

"(1) whether the person was placed under arrest for driving under the influence; (2) whether the arresting officer had reasonable grounds to believe that the person was driving under the influence; (3) whether, after being advised by the arresting officer that the privilege to operate a motor vehicle would be suspended if the person refused to submit to blood-alcohol testing, the person refused to submit to such a test; and (4) whether, after being so advised, the person submitted to such testing and the test revealed a blood-alcohol concentration of .08 or greater." *People v. Lent*, 276 Ill. App. 3d 80, 81 (1995) (citing 625 ILCS 5/2-118.1(b) (West 1994)).

¶ 14    Exceptions to this list exist, and some of these exceptions concern defects in the officer's Sworn Report, but the *manner* in which notice of the suspension is served on the defendant is not one of the exceptions. See *Lent*, 276 Ill. App. 3d at 81-82 (the defendant was not entitled to a rescission of the statutory summary suspension of his driving privileges where a civilian employee of the police department, and not the arresting officer, served notice of the suspension on the defendant); see also *Kalita v. White*, 342 Ill. App. 3d 796, 806 (2003) (rescission under zero tolerance statute (625 ILCS 5/11-501.8 (West 2002)) was not warranted where, despite defect in manner of service, *i.e.*, written notice of the suspension was handed to the defendant's mother, not the defendant, the defendant had actual knowledge of the suspension and, thus, was not deprived of a substantial right).

¶ 15    *People v. Donnelly*, 327 Ill. App. 3d 1101 (2002), illustrates that a missing notation regarding the manner in which notice of the suspension is served on the defendant is not one of the defects in an officer's Sworn Report that warrants rescinding a statutory summary suspension. In *Donnelly*, the Sworn Report "indicated that the defendant was served notice of [the] summary suspension on January 28, 2001," which happened to be the date that Donnelly was arrested. *Donnelly*, 327 Ill. App. 3d at 1103. However, the Sworn Report did not indicate whether Donnelly was given notice of the suspension personally or by mail. *Donnelly*, 327 Ill. App. 3d at 1103. Just as in this case, neither box on the preprinted Sworn Report was checked. *Donnelly*, 327 Ill. App. 3d at 1103. Donnelly petitioned to rescind the suspension on the ground that the Sworn Report was defective. *Donnelly*, 327 Ill. App. 3d at 1103. Specifically, Donnelly argued that the "[S]worn [R]eport was defective because it did not indicate the method of service." *Donnelly*, 327 Ill. App. 3d at 1103. At the hearing on the petition, the arresting officer testified that he served Donnelly with notice of the suspension on the date of the arrest. *Donnelly*, 327 Ill. App. 3d at 1103. The trial court denied the petition, and the appellate court affirmed the denial. *Donnelly*, 327 Ill. App. 3d at 1103-04. The appellate court determined that, because the Sworn Report indicated *when* Donnelly was given notice of the suspension, the Secretary had sufficient information from which it could suspend Donnelly's driving privileges. *Donnelly*, 327 Ill. App. 3d at 1104.

¶ 16    Given that the pertinent facts in *Donnelly* are the same as those in this case, the same conclusion is warranted. As in *Donnelly*, the Sworn Report does not indicate the manner in which defendant was notified of the statutory summary suspension of his driving privileges. However, like in *Donnelly*, the Sworn Report specifies the date on which defendant was given notice of the suspension. Because the date of the notice is reflected in the Sworn

Report, the Secretary had sufficient information to process the suspension. See 625 ILCS 5/11-501.1(h) (West 2008). The lack of information regarding *how* defendant was served with the notice, in contrast to *when* defendant was given notice, is a defect that does not warrant the rescission of the suspension. Compare *Donnelly*, 327 Ill. App. 3d at 1104, with *People v. Palacios*, 266 Ill. App. 3d 341, 343 (1994) (although Sworn Report failed to indicate *how* the defendant was served with notice of the statutory summary suspension of his driving privileges, court did not address impact of that defect, as the Sworn Report also failed to indicate *when* the defendant was served with notice, and that defect warranted rescission of the suspension), and *People v. Osborn*, 184 Ill. App. 3d 728, 730 (1989) (a trial court does not err in rescinding the statutory summary suspension of a defendant's driving privileges when notice of the suspension was *never served* on the defendant).

¶ 17    Defendant argues that the officer's failure to specify how notice was given shows that the Sworn Report lacked sufficient information for the Secretary to process the suspension. At the hearing on the petition to rescind the suspension, the State moved to amend the Sworn Report to show that notice was given to defendant via mail rather than personally. Emphasizing this fact and citing Illinois Supreme Court Rule 12 (Ill. S. Ct. R. 12 (eff. Dec. 29, 2009)), defendant argues that he was denied due process. Specifically, defendant contends that, because the Sworn Report did not indicate the manner by which he was served with notice of the suspension, the Secretary did not have, as required by section 11-501.1(h) of the Code, "sufficient information" to calculate the "effective date of the suspension" and then mail notice to defendant of when his suspension would start. 625 ILCS 5/11-501.1(h) (West 2008). Therefore, he argues, the Secretary should have forwarded the Sworn Report to the trial court and sent a copy to the police department, identifying the fact that the Sworn Report failed to indicate the manner by which notice of the suspension was given to defendant. The dissent agrees with defendant that Supreme Court Rule 12 applies here.

¶ 18    Defendant's argument would be more persuasive if section 11-501.1 mentioned service on the defendant by mail, incorporated Rule 12 by reference, or required the officer to certify the defendant's *receipt* of the Sworn Report. Instead, section 11-501.1 twice refers to the law enforcement agency *giving notice*, without regard to when the defendant actually receives it. Section 11-501.1(f) states that, when blood or urine analysis confirms the DUI, "the arresting officer or arresting agency shall *give* [immediate] notice as provided in this Section or by deposit in the United States mail." (Emphasis added.) 625 ILCS 5/11-501.1(f) (West 2008). Section 11-501.1(g) states that the suspension shall take effect on the forty-sixth day following "the date the notice of the statutory summary suspension or revocation was *given to the person*." (Emphasis added.) 625 ILCS 5/11-501.1(g) (West 2008). The plain and ordinary meaning of the statute does not require that the officer certify the date of the defendant's actual receipt of the notice. Consistent with section 11-501.1, the form used for the Sworn Report in this case states that "notice of summary suspension *was given on* [March 12, 2010]." (Emphasis added.) The form did not ask the officer to identify the date on which defendant actually *received* notice. Moreover, Rule 12 applies to proofs of service filed in the trial courts and reviewing courts, not to notice given to a defendant by a police officer. Defendant cites no authority for the proposition that Rule 12 affects the way the Secretary determines when a statutory summary suspension should begin. Our opinion is

consistent with the manner in which the Secretary calculates the effective start date of a suspension when the defendant is given notice by mail. See *Jordan*, 336 Ill. App. 3d at 289 (the Sworn Report indicated that on July 23, 2001, the officer had given notice, by mail, of the statutory summary suspension of the defendant's driving privileges, and the Secretary mailed a notice of confirmation of the statutory summary suspension indicating that it would take effect on September 7, 2001, which was 46 days later).

¶ 19 Defendant argues that a factual dissimilarity between *Donnelly* and this case means that *Donnelly* should not apply. At the hearing on the petition in *Donnelly*, the arresting officer testified that he gave immediate notice of the suspension on the date of the arrest. Defendant argues that, unlike in this case, any error in failing to indicate on the Sworn Report the manner by which Donnelly was given notice was harmless because the Secretary started the suspension on the correct date. However, there was no evidence in *Donnelly* indicating that, at the time of processing the suspension, the Secretary knew how notice had been given, as the Sworn Report did not indicate whether notice was given personally or by mail. Even though the Secretary processed the suspension without knowing *how* notice was given, the *Donnelly* court concluded that the Secretary had sufficient information to satisfy section 11-501.1(h).

¶ 20 This case and *Donnelly* cannot be distinguished based on the testimony of the two officers at the respective hearings. Section 11-501.1(h) does not rely on hindsight in determining whether a Sworn Report is defective. Instead, the statute focuses on the information provided in the Sworn Report when the suspension is processed by the Secretary. Whether the Sworn Report provided the Secretary with sufficient information to process the suspension does not turn on the testimony of the officer at a summary suspension hearing months later.

¶ 21 Thus, the absence of information regarding the manner of giving notice did not warrant rescinding the suspension in *Donnelly* or here. As discussed, the Sworn Report in this case and in *Donnelly* each identified the date on which notice was given, and neither defendant denied receiving notice.

¶ 22 Although the incompleteness of the Sworn Report does not mandate the rescission of the statutory summary suspension in this case, the better course would have been for the officer to complete every section of the Sworn Report to provide the Secretary with more information for processing the suspension. See *People v. Steder*, 268 Ill. App. 3d 44, 47 (1994). Because we conclude that the trial court committed reversible error in granting defendant's petition to rescind the statutory summary suspension of his driving privileges, we need not address the State's alternative argument that the trial court erred in denying the State's motion to amend the Sworn Report to reflect how notice of the suspension was served on defendant.

¶ 23                                                        CONCLUSION

¶ 24 The circuit court of Du Page County's rescission of the statutory summary suspension is reversed, and the cause is remanded for proceedings consistent with this opinion.

¶ 25    Reversed and remanded.

¶ 26    JUSTICE McLAREN, dissenting:

¶ 27    A basic fallacy underlies the majority's decision in this case, and that is as follows: There is only one effective form of service–immediate. Whether service is in person or by mail, service is immediate and *instanter*. This misconception leads to various errors and a misdirected judgment. Therefore, I respectfully dissent.

¶ 28    The decision begins by positing that the "dispositive issue" in this case is whether defendant's suspension "must be rescinded where the Sworn Report failed to indicate the manner by which defendant was given notice of the summary suspension of his driving privileges." *Supra* ¶ 9. Superficially, this is correct, but only if the service is in person and the date of service in person is the same date as the subscription by the officer. However, the decision neither grasps nor recognizes that the reason *why* the absence of information regarding the method of service can result in error is that the lack of information can cause an incorrect computation of the commencement date of the suspension. The fact the decision omits is that there is a purpose behind checking the appropriate box and the information provided thereby. The boxes themselves are of little import, and the failure to check one of the boxes is not always, in itself, error. An officer could simply write on the report the relevant information regarding the manner of service of the notice or postdate the notice by four days if service was by mail. The failure to mark the appropriate box, however, creates a high probability that error will occur, because the purpose of the boxes and the service information is to ensure that the Secretary of State can compute the correct time to commence the suspension. Without this information, the Secretary of State must speculate as to the correct date that service was *effected*; put another way, the informational deficiency could lead to a legal deficiency. The Secretary of State understands that there is a difference between the *effective dates of service* in person and by mail. If he did not, there would be no reason to seek the information provided by checking one of the boxes. Further, the necessity for the boxes is made manifest by the supreme court rule and statutory provisions relating to the *effective date* of mailing for purposes of service and the computation of the date for the commencement of the suspension.

¶ 29    The decision, however, treats this information as irrelevant and immaterial. According to the decision, whether notice was served personally, *i.e.*, immediately, or served by mail, *i.e.*, four days later than the date on the Sworn Report, service was effective *instanter* on the date reflected on the Sworn Report. *Supra* ¶ 16. If the holding is correct, what is the reason for placing the boxes on the report and distinguishing between immediate personal service and nonimmediate service by mail?[1] We interpret a document in such a way that none of its terms is rendered meaningless or superfluous. See *Pekin Insurance Co. v. Wilson*, 391 Ill. App. 3d 505, 512 (2009) (insurance policy). Whether service was personal or by mail must have some meaning. The decision implicitly acknowledges this when it states that "the better

[1]An alternative format could provide that the form indicate that, if service is given by mail, the officer should postdate the form four days from the date of mailing.

course would have been for the officer to complete every section of the Sworn Report to provide the Secretary with more information for processing the suspension." *Supra* ¶ 22. Why is the completion of the section regarding the method of service "the better course" if that information is irrelevant to the processing of the suspension?

¶ 30 More importantly, the decision has adopted, *sub silencio* the "mailbox rule" in a skewed form. The mailbox rule provides for the *instanter* filing in reviewing courts of records, briefs, and other papers that are received after the due date. See Ill. S. Ct. R. 373 (eff. Feb. 1, 1994). However, the mailbox rule (and the decision cites no authority that would suggest its application here) does not relate to service of notice so much as to the effective filing date in limited instances. The decision skews the rule to apply to service on a person to obtain jurisdiction rather than the normal application to the filing of documents and notices that do not pertain to personal jurisdiction. The decision does not cite to authority for the conclusion that service by mail *can* or *may* be effected *instanter*. I say "*can*" because I submit the United States Postal Service does not provide *same day* delivery. I say "*may*" because I am not aware of a statute, rule, or case that provides for *instanter* service by mail in these proceedings.

¶ 31 The decision states:

"The plain and ordinary meaning of the statute does not require that the officer certify the date of the defendant's actual receipt of the notice. Consistent with section 11-501.1, the form used for the Sworn Report in this case states that 'notice of summary suspension *was given on* [March 12, 2010].' (Emphasis added.) The form does not ask the officer to identify the date on which defendant actually *received* notice." (Emphasis in original.) *Supra* ¶ 18.

I submit that this is a red herring and a *non sequitur*. It is a red herring because the officer is required to neither compute the effective date of service nor send notice of the effective date of the suspension, which is sent by the Secretary of State. If service were personal, the effective date of service would be redundant and superfluous, as in *Donnelly*. However, if service were by mail and the officer correctly checked the box, the officer would have identified to the Secretary of State that the *effective date* of service was implicitly four days later. The Secretary of State would know to compute the commencement of the suspension based on service to the defendant four days after the date the officer dated the report. The format chosen by the Secretary of State informs the Secretary of the date the officer effected service and *how* it was effected, *i.e.*, the date from which the 46-day period should be computed properly. It was for the Secretary to compute the correct date for the suspension's commencement based on the information contained in the appropriate box, not for the officer, as the decision declares.

¶ 32 The decision completely misinterprets the meaning of Rule 12. Illinois Supreme Rule 12(c) (eff. Dec. 29, 2009) provides that "Service by mail *is complete four days after* mailing." (Emphasis added.) Rule 12(c) has nothing to do with receipt of a document served by mail; the rule "was designed to establish a bright-line rule to account for delays in mailing." *People v. Bywater*, 223 Ill. 2d 477, 491 n.4 (2006) (Freeman, J., dissenting). As Justice Freeman noted, "[I]f a petition is mailed November 1, Rule 12(c) renders service

'complete' on November 5 notwithstanding the actual date of receipt, which may in fact be later." *Bywater*, 223 Ill. 2d at 491 n.4 (Freeman, J., dissenting). Here, neither we nor the Secretary of State actually know the real meaning of the note on the Sworn Report that "Notice of Summary Suspension [was] Given On 3/12/10." Was notice hand delivered on that date? Not according to the motion to amend the report to indicate mailing. Was it placed in the mail on that date? According to the motion to amend it was. Or is that date four days after the notice was placed in the mail? It is possible; but since the officer is not required to compute the effective date on this form it is improbable.

¶ 33    The decision summarily dismisses the applicability of Rule 12 to this situation, stating that "Rule 12 applies to proofs of service filed in the trial courts and reviewing courts, not to notice given to a defendant by a police officer." *Supra* ¶ 18. Rule 12 provides that, "When service of a paper is required, proof of service shall be filed with the clerk." Ill. S. Ct. R. 12(a) (eff. Dec. 29, 2009). Once a driver has refused testing or the officer learns that the driver has failed a test that discloses a violation of section 11-501 of the Code, the officer "shall *** submit a sworn report to the circuit court of venue *and* the Secretary of State." (Emphasis added.) 625 ILCS 5/11-501.1(d) (West 2008). The summary suspension of driving privileges is a statutory proceeding that is civil in nature. *People ex rel. Edgar v. Pence*, 191 Ill. App. 3d 96, 98 (1989). As the dissent in *Donnelly* noted:

> "In *Palacios*, this court stated that the officer's sworn report plays a unique role in a summary suspension hearing because, like a complaint in a civil case, it is the *jurisdictional step that starts the proceeding*. *Palacios*, 266 Ill. App. 3d 341, 640 N.E.2d 657." (Emphasis added.) *Donnelly*, 327 Ill. App. 3d at 1105 (Holdridge, J., dissenting).

Our supreme court has also determined that the Sworn Report "serves a function analogous to that of a complaint in an ordinary civil proceeding." *People v. McClain*, 128 Ill. 2d 500, 507 (1989). In addition, the officer "shall *serve* immediate notice of the statutory summary suspension on the person" who failed the test. (Emphasis added.) 625 ILCS 5/11-501.1(f) (West 2008). The decision is silent as to why the required service of notice to the defendant ("a paper") does not require proof of that service such that Rule 12 is inapplicable. It is clear that the rules of service must be complied with at all other times in the statutory summary suspension hearing process. See *Bywater*, 223 Ill. 2d at 482, 486; see also *People v. Bywater*, 358 Ill. App. 3d 191, 198-99 (2005).[2] The Sworn Report submitted to the court should itself serve as the proof of service; the sworn statement of the officer that he either gave the notice in person *or* deposited it in the mail is sufficient to prove service under Rule 12(b)(2) or (b)(3). Had the officer merely checked the appropriate box, there would be no question. However, he did not and this report both is incomplete (minor error) and resulted in the Secretary of State improperly computing the *effective date* of the service and of the suspension (major error).

---

[2]Although our supreme court reversed our judgment in *Bywater*, the court did so on our determination that "the 30-day time period [in which to hold a hearing on a petition to rescind] began once service on the State was complete," not on our conclusion that service on the State was complete "four days after the notice was placed in the mail" (*Bywater*, 358 Ill. App. 3d at 198). See *Bywater*, 223 Ill. 2d at 486.

¶ 34     The decision has effectively created a new form of service to obtain jurisdiction over a person; service by mail *instanter*. I submit, it is possible to create legal fictions, but here, the decision has defined a new form of service that is not consistent with reality.

¶ 35     In addition, the decision cites to *People v. Jordan*, 336 Ill. App. 3d 288, 289 (2003), to support its contention that its holding "is consistent with the manner in which the Secretary calculates the effective start date of a suspension when the defendant is given notice by mail." *Supra* ¶ 18. However, *Jordan* did not involve a question regarding the calculation of the beginning of a statutory summary suspension, based on the method of service; it involved the question of the effect of delay in giving notice of the beginning of the suspension after test results were obtained. See *Jordan*, 336 Ill. App. 3d at 290-91. The Secretary of State's calculation was not at issue; its accuracy was not contested, and that case is of no support to the decision here.

¶ 36     The decision adopts the holding in *Donnelly*, stating, "Given that the pertinent facts in *Donnelly* are the same as those in this case, the same conclusion is warranted." *Supra* ¶ 16. That statement is incorrect on the facts and incorrect on the law. The "pertinent facts" in *Donnelly* are actually the *opposite* of what transpired in this case. In *Donnelly*, the defendant was personally served *instanter* with the notice of suspension on the day that he was arrested. Additionally, the officer in *Donnelly* testified at the rescission hearing that he served the notice personally (rather than mailing it). In this case, the officer arrested defendant on December 21, 2009. Defendant was *not* served personally on the date of arrest, nor did the officer testify at the hearing that he served defendant personally and/or that service was effected on the date of arrest. The Sworn Report "indicated that 'Notice of Summary Suspension [was] Given On 03/12/10.' " *Supra* ¶ 3. The delay in service from the date of the arrest to the effectuation of service was at least 81 days if by personal service and 85 days if by mailing.

¶ 37     As the decision relates, "Prior to a hearing on the petition, the State sought to amend the Sworn Report to indicate that notice of the suspension was served on defendant by mail." *Supra* ¶ 7. Assuming that the State knew what it was doing by trying to amend the notification, it was admitting that the officer did *not* personally serve defendant *on* the day of the arrest or 81 days later on March 12. The State was attempting to conform the pleading to the proofs. However, in the process of making the record reflect what actually transpired, the State effectively established that the suspension was fatally defective because it was issued prematurely: four days prematurely.

¶ 38     By equating *Donnelly* with this case, either the decision is incorrect in concluding that the "pertinent" facts are the same, or it does not deem the *effective date* of service in person to be different from that of service by mail. The rationale equating the effective service date of the two forms of service concludes that service by mail is effected on the day of mailing-the mailbox rule. See *supra* ¶ 30. However, the decision does not authenticate such a conclusion. More importantly, if the rule were applicable, there would be no reason for the inclusion of the boxes on the Sworn Report, and there would be no need for any analysis of the effective date of service, for that date would be whatever date was on the report. By such an analysis, the decision gives no *raison d'etre* for the boxes or the statutory provision for the return of the form for correction if there is a problem.

¶ 39    As the decision points out, the "pertinent" portion of the form stated as follows:

"At the bottom of the Sworn Report was the following:

'Pursuant to Section 11-501.1 of the Illinois Vehicle Code I[, *i.e.*, the officer,] have:

☐ Served *immediate* Notice of Summary Suspension of driving privileges on the above-named person.

☐ Given Notice of Summary Suspension of driving privileges to the above-named person by depositing in the U.S. mail said notice in a prepaid postage envelope addressed to said person at the address as shown on the Uniform Traffic Ticket.'[3]

Underneath this certification, the officer signed his name and dated the Sworn Report '3/12/10.' " (Emphasis added.) *Supra* ¶¶ 3-4.

¶ 40    In *Donnelly*, neither box was checked, but the notice of summary suspension was served on the date of arrest, and the officer testified to that fact in court. The trial court found no error because the officer did in fact serve *immediate* notice and, therefore, the Secretary correctly computed the date of commencement of the suspension. The failure to check the correct box did not alter the fact that, based upon the date contained in the Sworn Report and the testimony of the officer, the dates of arrest and *effective* service were the same.

¶ 41    In *Donnelly*, the date of arrest and the date of service were the same; thus, fortuitously, the date of certification was correct for purposes of determining both that the officer immediately served the notice of summary suspension and the correct date on which to commence the suspension. *Donnelly* did not say, as the decision holds, that the date of certification is sufficient in all instances. The only factual situation that the *Donnelly* court considered was that personal service of the notice of summary suspension was *effected* on the date of certification. *Donnelly* did not say that, had the officer mailed the notice, the Secretary of State could have conclusively presumed that service was effected *instanter* and that the certification date was valid. The limited holding in *Donnelly* does not fit the facts in this case, and the decision cannot establish that the Third District even contemplated the effective date of service by mail. In *Donnelly*, the Secretary of State fortuitously calculated the correct date by presuming that service was effected personally. In this case, the Secretary incorrectly presumed that notice was effected personally, and, despite statutory admonishments to the contrary, failed to inquire and improperly imposed the suspension.

¶ 42    If service is personal, the method of service does not delay the commencement of the suspension. If service is by mail, then the effective date of service is four days after the date of the certification. The decision does not address the implications of the ruling on the State's motion to amend the Sworn Report, because it apparently does not wish to deal with the "pertinent" fact that the suspension commenced four days earlier than it should have because of the failure to take into account the actual, physical delay in service by mail.

¶ 43    In both this case and *Donnelly*, the Secretary called heads. In *Donnelly*, it came up heads.

_____

[3]It is interesting to note that the form indicates that service in person is characterized as *immediate*, whereas there is no such characterization concerning service by mail.

In this case, it came up tails, but the decision concludes that *Donnelly* applies and declares that it really came up heads and will always come up heads despite the form of service. In the process, the decision has effectively made irrelevant the supreme court rule regarding service, made the informational boxes on the form immaterial surplusage, made meaningless the need for the Secretary to ever send the matter back for clarification and/or correction, and disregarded the factual reality that service by mail is neither *instanter* nor same day.

¶ 44    The decision has created a counterfactual conditional[4] that it has formulated thusly: the service on defendant was the same as it was on Donnelly; thus there was no error in determining the effective date for commencement of the suspension. However, neither the manner of service nor the effective date of service on defendant was the same as on Donnelly and, therefore, the effective date of notice is not the same for both. The effective date of the summary suspension in this case has been computed by the Secretary of State as if the methods of service were the same–*instanter*–due to the lack of information. Since they were not, the Secretary sent out an improper notice of the effective date of the suspension, which was four days too soon. A summary suspension that begins anything other than 46 days from the date that the defendant was effectively given notice of the summary suspension is in error and should be rescinded. See *People v. Pollitt*, 2011 IL App (2d) 091247, ¶ 17 (error of one day in the calculation was sufficient for rescission).

¶ 45    Realistically, service by mail is not achieved *instanter* unless the recipient is inside the mailbox and accepts delivery. Practically, the government does not allow recipients inside mailboxes. Thus, effective service by mail *instanter* is a physical impossibility. Nevertheless, there must be some norm to determine when service by mail is achieved, and our supreme court has determined in Rule 12 that the effective date is four days.[5] The difference in the

---

[4]A counterfactual conditional is a conditional statement "indicating what *would be* the case if its antecedent *were* true (although it is *not* true)." (Emphases in original.) http://en.wikipedia.org/wiki/Counterfactual_conditional (last visited Sept. 22, 2011); see also *Corcoran-Hakala v. Dowd*, 362 Ill. App. 3d 523, 530 (2005).

[5]Other norms have been established to apply in different situations. See, *e.g.*, 80 Ill. Adm. Code 1200.30(c) (2011) (applying to the Illinois Labor Relations Board) ("Service of a document upon a party by mail shall be presumed complete 3 days after mailing, if proof of service shows the document was properly addressed. This presumption may be overcome by the addressee, with evidence establishing that the document was not delivered or was delivered at a later date."); *City of St. Charles v. Illinois Labor Relations Board*, 395 Ill. App. 3d 507, 509-10 (2009). For parties seeking direct review by the appellate court of an administrative order, if no other method of service is provided in the governing Act, the agency's decision "shall be deemed to have been served either when a copy of the decision is personally delivered or when a copy of the decision is deposited in the United States mail." 735 ILCS 5/3-113(a) (West 2008). Section 1.25 of the Statute on Statutes provides that, in certain instances, papers filed with and payments made to the State or a political subdivision through the mail are "deemed filed with or received by the State or political subdivision on the date shown by the post office cancellation mark stamped upon the envelope or other wrapper containing it." 5 ILCS 70/1.25(1) (West 2008). These norms have been established to apply in specific situations; they are not interchangeable and cannot be applied to different situations by

two types of service results in an error of four days legally and at least one day in reality. In disregarding the nature and extent of the error, the decision also substantially minimizes the statutory language that was enacted to resolve this problem. The effect of the holding that the two forms of service are immediately effected as of the date on the report is to make the informational boxes meaningless surplusage, make Rule 12 inapplicable, and make meaningless the statutory language providing for return of the Sworn Report for correction except in cases where there is no date whatsoever (the factual situation in *Palacios*). The decision, simply by determining that the "pertinent facts" are the same, concludes that failing to check the appropriate box is not error because *Donnelly* said so. Failing to check the box is not the benchmark; the benchmark is the effective date of service. If the effective dates of service were the same, I would not be dissenting.

¶ 46    I suggest that this case should be remanded to determine if the State could establish that the mailing was delivered on March 12. If not, I would affirm the trial court's judgment rescinding the suspension.

---

judicial fiat.